UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KUSHAWN J. MOORE,

    Plaintiff,　　　　　　　　　　Civil Action No. 13-11297

        v.　　　　　　　　　　District Judge PAUL D. BORMAN
　　　　　　　　　　　　　　　　Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kushawn J. Moore brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On June 10, 2010, Plaintiff applied for DIB and SSI, alleging disability as of March 8, 2010 (Tr. 137-143, 144-148 ). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 3, 2011 in Detroit, Michigan (Tr. 24).

Administrative Law Judge ("ALJ") J. McGovern presided. Plaintiff, represented by attorney Jarvis William, testified, (Tr. 30-54) as did Vocational Expert ("VE") Diane Regan (Tr. 54-59). On December 8, 2011, ALJ McGovern found that although Plaintiff was unable to perform his past relevant work, he was capable of a significant range of other work (Tr. 17-18). On January 23, 2013, the Appeals Council denied review (Tr. 1-4). Plaintiff filed the present action on March 23, 2013. .

## BACKGROUND FACTS

Plaintiff, born November 12, 1981, was 30 at the time of the administrative decision (Tr. 18, 137). He completed 10th grade (Tr. 167) and worked previously as a restaurant worker (Tr. 167). He alleges disability as a result of torn ligaments in his right leg, asthma, hypertension, and sleep apnea (Tr. 166).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently stood 6' 4" and weighed 300 pounds (Tr. 30). He had been using a cane for the last six months and before that, used crutches for one year (Tr. 31). He currently lived with his wife and his two children, ten and seven, from another relationship (Tr. 31). He received FIA funds (Tr. 31-32). Although disabled as of March, 2010, Plaintiff earned over $12,000 in 2010 doing "odd jobs" (Tr. 32). Before being laid off by his employer in 2009, he also performed "side jobs" because child support payments were taking most of his income (Tr. 33). He was laid off from Little Caesars because his leg was constantly swelling (Tr. 33). At present, he took Vicodin and iced his knee multiple times each day (Tr. 34). He

received steroid injections to the knee once every three months and had recently enrolled in a physical therapy program (Tr. 35-36). He also experienced sinus problems, acid reflux, and asthma (Tr. 39).

Despite the use of crutches, Plaintiff was independently employed as a painter in 2010 (Tr. 34). He was able to complete painting jobs with the help of his eight younger brothers (Tr. 34, 50). His mother and wife performed household and laundry chores, and shopping, but he was able to perform personal care activities (Tr. 41, 45). He did not have a computer, but had a "game system" on his television that he played with his children (Tr. 43). He experienced problems reading due to dyslexia (Tr. 43, 53-54). He spent most of his day sitting with his leg elevated (Tr. 44). He did not have a driver's license and drove only short distances on an occasional basis (Tr. 45). He relied mostly on his wife for transportation (Tr. 51). He attended church occasionally (Tr. 46). He was unable to perform any yard work (Tr. 46). He denied depression or concentrational problems (Tr. 48, 53). His activities were limited to watching television and talking to his children (Tr. 49).

Plaintiff's condition had worsened since 2010 (Tr. 52). He was now unable to perform any of his former "odd jobs" due to medication side effects of sleepiness and leg swelling (Tr. 52).

### B.   Medical Evidence

#### 1. Treating Sources

April, 2001 school records state that Plaintiff was placed in an Individualized

Education Program ("IEP") as a result of a "specific learning disability," but was able to keep up with the mainstream curriculum (Tr. 208-210).

Plaintiff underwent a tonsillectomy, performed without complications, on March 8, 2010 (Tr. 335-336). Nerve conduction studies of the upper extremities performed the following month showed unremarkable results (Tr. 375). Plaintiff demonstrated 5/5 strength in the upper extremities (Tr. 375). In May, 2010, Plaintiff sought emergency treatment for abdominal pain (Tr. 215). He was diagnosed with Gastroesophageal Reflux Disease ("GERD") (Tr. 222, 230). He reported chronic leg swelling (Tr. 270). A CT of the head was unremarkable (Tr. 229, 309). Imaging studies of the chest were also unremarkable (Tr. 274, 319). The same month, Harvey Zieger, D.O. recommended a sleep apnea study (Tr. 377).

In June, 2010, Plaintiff sought treatment for intermittent bilateral knee swelling (Tr. 234). Orthopedic specialist Shelley Street, M.D. noted Plaintiff's report that he had required drainage of the knees "multiple times" and had previously received six steroid injections (Tr. 234). Plaintiff reported that knee problems were precipitated by a knee injury at the age of 10 and being shot in the knee at the age of 16 (Tr. 234). He reported pain of level zero to five on a scale of one to ten (Tr. 234). Dr. Street found the presence of "possible" right knee effusion and "mild arthritis" of the left knee (Tr. 235). However, imaging studies of the right knee were negative for "large joint effusion" or other abnormalities (Tr. 237). Dr. Street's July, 2010 treating notes state that Plaintiff denied knee pain while sitting and "4/10" pain while walking (Tr. 239). Dr. Street noted the absence of effusion and normal ambulation (Tr. 239). She found the presence of osteoarthritis with "mild thinning of the hyaline cartilage

of the right knee" (Tr. 240, 280 ). She recommended physical therapy (Tr. 240). In August, 2010, Harvey Zieger, D.O. completed a "Medical Needs" form for the State of Michigan, stating that Plaintiff was unable to work at his regular job for at least six months due to arthritis of the knee (Tr. 343). On October 2, 2010, Plaintiff sought emergency treatment for a foot injury (Tr. 290). An imaging study showed the fracture of one toe (Tr. 290). December, 2010 imaging studies of the knees were unremarkable (Tr. 267).

    A January, 2011 echocardiogram yielded unremarkable results (Tr. 278). In February, 2011, Plaintiff sought treatment for a sinus infection (Tr. 327). May, 2011 imaging studies of the chest were unremarkable (Tr. 362). In June, 2011, Plaintiff was placed on a weight reduction program (Tr. 325-326). The same month, an intake examination by University Pain Clinic noted Plaintiff's right knee problems as a result of a broken leg at the age of 12 and a gun shot wound to the right leg at the age of 18 (Tr. 349). Plaintiff denied "burning or shooting pain" (Tr. 349). Intake records note that Plaintiff was morbidly obese with mild effusion and crepitus of the right knee (Tr. 351). Plaintiff exhibited an antalgic gait but was able to stand with the help of a cane (Tr. 351). He exhibited a normal mood and affect (Tr. 351). The following month, Plaintiff reported that prescribed pain medication was ineffective (Tr. 353). He appeared fully oriented with a normal affect (Tr. 354-355). He was prescribed Vicodin (Tr. 355). In August, 2011, Dr. Zieger found that Plaintiff was limited to lifting 10 pounds on an occasional basis and was unable to stand or walk for even two hours in an eight-hour workday (Tr. 345). He found that Plaintiff required assistance with meal preparation, shopping, laundry chores, and housework (Tr. 346). He found that

Plaintiff's knee condition was deteriorating (Tr. 348). The same month, University Pain Clinic notes state that Plaintiff reported doubling his Vicodin dose (Tr. 358).

### 2. Non-Treating Sources

In October, 2010, Dr. Atul C. Shah, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's reports of asthma, hypertension, GERD, and pain and swelling of the knees (Tr. 247-250). Plaintiff reported "as needed" use of crutches but denied the use of a cane (Tr. 248). Plaintiff reported "some relief" from pain medications (Tr. 248). Dr. Shah observed moderate restriction in the range of knee motion but no joint enlargement or swelling (Tr. 249). Dr. Shah concluded that Plaintiff had "moderate restrictions for occupational ability because of knee arthritis, asthma and high blood pressure" (Tr. 249). He found "moderate to profound limitations for walking, standing and climbing the stairs and ladders"[1] (Tr. 249). Dr. Shah also found the need for a walking aid (Tr. 254).

The same month, psychiatrist R. Hasan, M.D. performed a consultative mental examination on behalf of the SSA, noting Plaintiff's reports of depression due to physical problems and past legal problems (Tr. 256-258). Dr. Hasan noted that Plaintiff was fully

---

[1] Dr. Shah's examination occurred four days after Plaintiff sought emergency treatment for a broken toe (Tr. 390). However, the consultative report is absent any indication that Plaintiff attributed his difficulties walking in part to the injury or even reported the recent foot injury to the consultative examiner (Tr. 249).

-6-

oriented with a calm affect (Tr. 257). Dr. Hasan assigned Plaintiff a GAF of 50[2] with a "fair to guarded" prognosis (Tr. 258).

### C. Vocational Expert Testimony

VE Diane Regan classified Plaintiff's former work as a cook as skilled and exertionally medium; auto body repairer, skilled/medium; and construction worker, semiskilled/heavy[3] (Tr. 56). The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work experience:

> Assume this person can work at a restricted sedentary level. That is lift ten pounds regularly and occasionally, sit for six hours, stand for two hours, would require the ability to sit and stand as needed. This person cannot climb or crawl, kneel, stoop, or crouch but could bend occasionally. This individual would require cane use to stand and walk. There would be no work around unprotected heights, operation of machinery or work around hazards, I should say. The individual would require to extend or elevate his leg below table height (right leg) and would require simple unskilled work activities. With those limitations would that individual be able to perform past work? (Tr. 56).

In response, the VE found that although the hypothetical individual would be unable

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV-TR*)(4th ed.2000).

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

to perform any of Plaintiff's former jobs, he could perform the unskilled, exertionally sedentary work of a surveillance system monitor (1,200 existing jobs in the region of southeast Michigan) and sorter (1,500) (Tr. 57). The VE testified that if the same hypothetical individual required unscheduled work breaks because of pain, or were likely to be absent more than twice a month, all competitive employment would be precluded (Tr. 57). In response to questioning by Plaintiff's attorney, the VE stated that the added limitations of "avoiding the public or limited ability to concentrat[e]," or, "limited contact with the general public" would not change her job findings (Tr. 58). She stated that the inability to concentrate for up to 25 percent of the work day would preclude all work (Tr. 58). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT"), adding that her testimony pertaining to the sit/stand option was based on her own professional experience (Tr. 59).

### D. The ALJ's Decision

Citing the administrative transcript, the ALJ found that Plaintiff experienced the severe impairments of "arthritis of the bilateral knees, asthma, adjustment disorder and obesity" but that none of the conditions met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr.12). He determined that Plaintiff experienced mild restriction in activities of daily living and social functioning and moderate difficulties in concentration, persistence, or pace (Tr. 13).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for unskilled, sedentary work with the following additional restrictions:

> [He] is able to lift and/or carry 10 pounds occasionally and 10 pounds frequently, walk and stand for two hours total in an eight-hour workday, and sit for six hours total out of an eight-hour workday with a sit stand option as needed. The claimant is unable to climb, crawl, kneel, stoop or crouch; he is able to occasionally bend; the claimant is unable to work at unprotected heights, around hazards or with machine operation; he requires a cane to stand and walk; the claimant is unable to perform work with concentrated exposure to dust, fumes, heat or cold; he requires elevation of his right lower extremity below table height; and, the claimant is able to perform simple, unskilled work (Tr. 14).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to return to any of his former jobs, he could perform the work of a surveillance system monitor and sorter (Tr. 17-18).

The ALJ discounted Plaintiff's allegations of limitation, citing December, 2010 imaging studies of the knees showing "no evidence of acute osseous abnormality" (Tr. 15). He noted that emergency treatment records for abdominal pain contained no mention of Plaintiff's allegedly disabling leg and lung conditions (Tr. 15). Despite Plaintiff's claim of limitation as a result of asthma, the ALJ noted that May, 2011 chest x-rays were negative for abnormalities (Tr. 15). The ALJ stated that he factored obesity induced limitations into the RFC (Tr. 15).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The ALJ's Step Three Analysis

Plaintiff argues, in effect, that the ALJ did not provide a rationale for the finding that none of the severe impairments met or equaled a listed impairment. *Plaintiff's Brief* at 9-14. *Docket #17-1*. He contends that his knee condition qualified him for a "Step Three" disability finding pursuant to "Listing 1.02." *Id.* He cites *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 416, 2011 WL 1228165, *4 (6th Cir. April 1, 2011) in which a remand was granted on the basis that "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments . . . met or equaled a Listing" at Step Three of the ALJ's analysis. *Id.* (citing *Reynolds,* at *3).

"A Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds,* 424 Fed.Appx. at 414, *2; 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).

Listing 1.02 *Major dysfunction of a joint(s)* is characterized by "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02. To show disability under Listing 1.02(A), the joint dysfunction must be accompanied by "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B(2)." For claims of disability under this listing, "medical signs or laboratory findings must show the existence of a medically determinable impairment(s) that could reasonably be expected to produce the pain or other symptoms."

This argument is not well taken. First, Plaintiff does not cite any evidence showing that he is unable "ambulate effectively" as defined by the listings. Under § 1.00(B)(2), "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities. (Emphasis added). Plaintiff's alleged need for a cane would limit the function of one, rather than two upper extremities. Despite Plaintiff's claim that he required the use of crutches on occasion, none of the medical evidence shows that Plaintiff required the use of crutches or a walker to ambulate. The ALJ noted Plaintiff's acknowledgment that despite the knee condition, he was able to walk for up to four blocks without requiring a break (Tr. 14). The ALJ also observed that none of the

treating or consultative sources had found that Plaintiff met or medically equaled Listing 1.02 (Tr. 12). He cited Dr. Street's July, 2010 recommendation of conservative treatment and December, 2010 x-rays of the knee showing no "acute osseous abnormality" (Tr. 15). The ALJ reasonably found that Plaintiff's ability to work at odd jobs subsequent to the alleged March, 2010 onset of disability also undermined the claim (Tr. 16). The ALJ's finding that Plaintiff did not meet Listing 1.02 is thus well supported.

Plaintiff's argument that the ALJ did not sufficiently articulate his reasons for finding that Listing 1.02 was not met is without merit. In citing Listing 1.02, the ALJ noted that "no physician or acceptable medical source has opined that the . . . physical impairments meet or equal [1.02] or any other listing . . ." (Tr. 12). The ALJ supported the finding by citing the December, 2010 imaging studies, Dr. Street's findings of only mild abnormalities, Dr. Shah's finding that Plaintiff was capable of working, and Plaintiff's own admitted ability to work during 2010 (Tr. 15-16).

While Plaintiff apparently faults the ALJ for not listing these reasons directly following the Step Three finding, I am unaware of any case, including *Reynolds*, that states that all of the evidence supporting the Step Three finding must also be cited in that portion of the opinion. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411, 2006 WL 229795, *2 (6th Cir. January 31, 2006)(an ALJ's Step Three findings need not include a detailed discussion of why the claimant's condition does not meet a listing, so long as the ALJ's factual findings, taken as a whole, establish non-disability at Step Three). See also *Staggs v. Astrue*, 2011 WL 3444014, *3 (M.D.Tenn. August 8, 2011)(citing *Bledsoe*, at 411)(Sixth Circuit has

-13-

"implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis"). The Sixth Circuit "has emphasized that there is no 'heightened articulation standard'" at Step Three. *Snoke v. Astrue*, 2012 WL 568986, *6 (S.D.Ohio 2012)(citing *Bledsoe*, at 411). "[A]n ALJ is not obligated to 'spell out every consideration that went into the step three determination'")(punctuation omitted). *Id.,* citing *Bledsoe* at 411.

   Finally, while the issue statement preceding this argument suggests that Plaintiff takes issue with the discussion of the alleged mental impairments, *see Plaintiff's Brief* at 9, the text of the argument pertains mostly to the analysis of the knee condition. *Plaintiff's Brief* at 9-14. My own review of the evidence shows that the ALJ's findings regarding the mental impairments does not provide grounds for remand. The ALJ provided a page-long discussion of why Plaintiff did not meet the criteria for disability under Listing 12.04 (affective disorders) with citations to the transcript to support the findings (Tr. 13). My own review of the transcript also supports the ALJ's finding that Plaintiff did not experience greater than mild limitation in social functioning or activities of daily living, or, greater than moderate deficiencies in concentration, persistence, or pace (Tr. 13). Treating and consultative records state that Plaintiff was fully oriented and behaved appropriately (Tr. 257, 351, 354-355). The ALJ noted that Plaintiff had not "sought or received" mental health treatment (Tr. 16). Despite Plaintiff's background performing skilled work and the lack of mental health treating records (Tr. 56), the ALJ credited Plaintiff's claims of concentrational problems to some extent by limiting him to "simple unskilled jobs with no machine

operation, work at unprotected heights or around hazards" (Tr. 16).

### B. The Treating Physician Analysis

Plaintiff also disputes the form and substance of the ALJ's discussion of Dr. Zieger's findings. *Plaintiff's Brief* at 13-16. He also argues generally that the ALJ erred by placing distorted emphasis on the evidence supporting the a non-disability finding but giving short shrift to records supporting the opposite conclusion. *Id.*

Plaintiff is correct that an opinion of disability or limitation by a treating physician is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). However, in this case, the argument is entirely inapplicable. Plaintiff's contention that the ALJ did not consider the diagnoses of osteoarthritis and thinning of the hyaline by Dr. Street is flatly contradicted by the ALJ's citation to the Dr. Street's diagnosis (Tr. 15).

Likewise, Plaintiff's claim that the ALJ did not consider the severe mental impairments is contradicted by the acknowledgment and discussion of limitations as a result of an affective disorder at the second, third, and fifth steps of the administrative sequence (Tr. 12-16). Plaintiff notes that in August, 2010, Dr. Zieger found that he was unable to perform his former work. *Plaintiff's Brief* at 13-14 (citing Tr. 343). However, the ALJ, citing the treating findings, found that the treating physician's opinion was not inconsistent

with the conclusion Plaintiff was unable to perform his past relevant work but could do a significant range of sedentary, unskilled work (Tr. 16).

I also disagree with Plaintiff's generalized argument that the ALJ placed exaggerated emphasis on evidence supporting the Step Five finding while ignoring evidence to the contrary. The ALJ found that Plaintiff's claims of disability due to knee pain were not strongly supported by the objective studies or treating records, but nonetheless gave Plaintiff "the benefit of the doubt" by restricting him to sedentary jobs that did not require climbing, crawling, kneeling, stooping, or crouching and only occasional bending (Tr. 15). The ALJ also precluded work involving "concentrated exposure to dust, fumes, heat, or cold" despite the lack of evidence showing that asthma created work-related limitations (Tr. 15).

In closing, I note that the transcript supports the finding that Plaintiff experienced some degree of limitation. As such, my decision to uphold the ALJ's findings should not be read to trivialize his history of knee injuries. Nonetheless, the ALJ's determination that the Plaintiff was capable of a limited range of unskilled, sedentary work is generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of

service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: March 31, 2014       s/R.Steven Whalen
                            R. STEVEN WHALEN
                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on March 31, 2014, electronically and/or by U.S. mail.

                            s/Michael Williams
                            Case Manager for the
                            Honorable R. Steven Whalen